SLADE, executor, *v.* SLADE.

1. While the error of which complaint is made and which is sought to be reviewed under the provisions of § 6144 of the Civil Code must have been such as necessarily controls the final result in the cause, the right of review is not precluded because the ruling or action of the trial judge which in effect controls the case was not erroneous. One of the chief purposes of the court, one of its raisons d'etre, is to remove misapprehensions as to the law.

(a) Under the statements contained in the paragraphs of the caveat which were stricken, and which for the purposes of the demurrer the defendant was compelled to admit, a finding in favor of the defendant was demanded and would have resulted in the lower court had the ruling of the judge upon the demurrer been contrary to the decision rendered by him. Exceptions pendente lite were timely filed, and the bill of exceptions preserved the point.

(b) It is not to be presumed that a court has charged the jury on any issue of law or fact which was not in issue under the pleadings in the case; on the contrary it must be presumed that the charge of the court is confined to the issues as presented by the pleadings, when a previous ruling of the court upon demurrer has expressly withdrawn a portion of the issues originally set forth in the pleadings from further consideration, by striking a portion of the defendant's answer.

(c) For these reasons the motion to dismiss the writ of error is overruled.

2. No publication of a will is required in Georgia as an essential to its valid execution. Section 3846 of the Civil Code upon this point only provides that the writing " shall be attested and subscribed in the presence of the testator by three or more competent witnesses." The Code substantially adopts the provisions of the statute of frauds on the subject of the necessary formalities in the execution of wills; and this court has followed the construction placed by the English

courts upon that statute (29 Car. II, c. 2) prior to the Georgia adopting act of 1784.

(*a*) It is not necessary that a testator shall declare the instrument he executed to be his will or that the witnesses know that it is a will. "The usual mode in which assent to a will is manifested is by subscribing it, . . . and ordinarily the execution would constitute sufficient evidence of the testator's knowledge of its contents." "A will is duly executed and published, though the witnesses neither saw the testator's signature, nor were made acquainted with the instrument they attested, provided they were requested by the testator to subscribe the memorandum of attestation." *Beall* v. *Mann,* 5 *Ga.* 456, 469.

(*b*) Attestation of a will by the subscribing witnesses, signed by them in the presence of the testatrix and with her knowledge may be treated as the equivalent of a request by her that these persons subscribe their names as witnesses to the paper, and especially when such testatrix is shown to have been seeking witnesses for the purpose of having them attest her will.

(*c*) Even though the witnesses to a will be purposely misled into the belief that the paper which they are attesting is a different kind of paper, the validity of the execution of the will will not be affected thereby.

(*d*) "Attesting witnesses need not know that the instrument attested is a will, to make the attestation valid under a statute providing that wills must be attested and subscribed by witnesses in the presence of the testator and of each other."

3. A will may be duly executed in Georgia without any announcement by the testator of testamentary purpose, and without anything being said by him to show the nature of the instrument which the witnesses are called upon to subscribe. The maker's signature animo testandi and a showing by proof that he put his name bona fide upon the paper he desires witnessed, when he does not sign in their presence, renders the execution valid in general, and when the signatures of the witnesses are duly affixed as provided by law the act of execution becomes complete.

(*a*) The terms "attested" and "subscribed" are kindred in their nature, but subscribed is embraced in the term attested. Subscribe means merely to write beneath. Attestation is the act of witnessing the actual execution of a paper and subscribing one's name as a witness to that fact.

4. The third paragraph of the caveat was properly stricken, because there is no allegation that the testatrix was deceived by the defendant in error into believing that the will was a business paper, or that Mrs. Slade did not know it was a will. Fraud sufficient to invalidate a will exists only when it is shown that the testator relied on the misrepresentation and was deceived.

Nos. 3320, 3342.    July 10, 1923.

Appeal. Before Judge Munro. Muscogee superior court. June 15, 1922.

Florence Slade, the defendant in error, filed in the court of or-

dinary of Muscogee County a petition to probate in solemn form what was alleged to, be the will of Mrs. J. J. Slade (or Leila B. Slade). Mrs. Nettie Slade Leitner filed a caveat to the probate of the alleged will and to the admission of the instrument to record. By consent the case was appealed to the superior court of Muscogee County. In that court the caveatrix amended her caveat, and the propounder filed demurrers to the caveat as amended. While the case was pending in this court the caveatrix died and her executor was made a party plaintiff in error.

When the case was called for trial, and after argument on the demurrers, the judge sustained the third and fourth demurrers addressed to paragraphs 2 and 3 of the caveat and also subparagraph (m) of the 5th paragraph and struck these portions of the caveat. The case proceeded to trial, and the jury returned a verdict establishing the will, and a judgment was taken admitting the same to probate. The plaintiff in error brought the case to this court by direct bill of exceptions, complaining that the action of the trial judge in striking the two paragraphs of the caveat was such as necessarily controlled the result of the case, and for assignment of error alleges that "the court erred in permitting said verdict to be rendered and said judgment to be entered." The defendant in error filed a cross-bill, in which exception is taken to the overruling of the first, second, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, seventeenth, and nineteenth grounds of her demurrer. The paragraphs two and three which were stricken from the caveat are as follows:

" 2. It is not the will of the said Mrs. J. J. Slade, for the reason that the persons whose names are signed to said instrument as attesting and subscribing witnesses were not informed by the said Mrs. J. J. Slade that it was her will, nor were they informed by anybody else that it was such, nor did they know that said paper was or purported to be the will of said Mrs. J. J. Slade, but they were informed both by the deceased and the said Florence that it was a business paper; and that the said witnesses were not requested by the said Mrs. J. J. Slade, or any one for her, to attest and subscribe their names to said instrument as witnesses to the will of the said Mrs. J. J. Slade, nor did they so attest and subscribe at the instance and request of said Mrs. J. J. Slade or any one for her.

" 3.   It is not the will of the said Mrs. J. J. Slade, for the rea-
son that the said Florence A. Slade, at the time of the making of
the same, induced her mother, the said Mrs. J. J. Slade, to repre-
sent, and the said Florence herself did fraudulently represent, to
said witnesses that said instrument was a business paper, and the
said Florence fraudulently concealed the fact that said paper pur-
ported to be the will of said Mrs. J. J. Slade from said witnesses,
and thereby induced them to sign their names to said instrument
and place themselves in the position of apparently attesting and
subscribing said will as witnesses, when in fact two of said witnesses
thought and understood that the paper had reference to the pur-
chase of an automobile for said Mrs. Slade, and the other witness,
Mrs. Joseph, did not then know that the paper was the will of said
Mrs. Slade, for the paper was not then read by Mrs. Slade, or
read to her or the witnesses, or read by said witnesses at the time
of the signing."

On the hearing in this court the defendant in error made a
motion to dismiss the writ of error, upon the following grounds:
(1)  Because it does not affirmatively appear from the record of
the case in this court that the order of the court below in striking
the second and third paragraphs of the caveat was necessarily con-
trolling of the verdict of the jury and the judgment of the court
rendered thereon.   (2)  Because the order of the court striking the
second and third grounds of the caveat of the plaintiff in error was
not necessarily controlling of the final judgment rendered by the
court.   (3)  Because, after striking the second and third para-
graphs of the caveat, there still remain paragraphs under which
the questions of publication, fraud, undue influence, misrep-
resentation on the part of the defendant in error exerted upon the
testatrix, under which allegation evidence of fraud and misrep-
resentation could have been submitted for the consideration of the
jury.   (4)  Because it appears from the evidence of the three al-
leged attesting witnesses that these witnesses and Florence Slade
and the testatrix were the only persons present at the time of the
execution of the will.   (5)  Because on cross-examination of the
three alleged attesting witnesses and Florence Slade there was
elicited for the consideration of the jury substantially the same
evidence which might have been introduced in support of the al-
legations of the paragraphs of the caveat which were stricken, and

such evidence, having been permitted to go to the jury, raised issues which will be presumed to have been considered by the jury in reaching their verdict. (6) Because it must be presumed that the charge covered the issues of fact and of law made by the pleadings and evidence, and was correct on all issues involved.

G. Y. *Tigner* and *Love & Fort,* for plaintiff in error.

B. S. *Miller* and *Slade & Swift,* contra.

RUSSELL, C. J. (After stating the foregoing facts.)

1. We shall first deal with the motion to dismiss the writ of error. We bear in mind the rule that where a case is brought up, not as a whole, or after motion for a new trial, but by direct exception, assigning error in a particular ruling, the controlling character of the ruling must be made to appear. Civil Code, § 6144; *Miller* v. *Speight,* 61 *Ga.* 460; *Taylor* v. *Reese,* 108 *Ga.* 379-381 (33 S. E. 917); *Wright* v. *Hollywood Cemetery Cor.,* 112 *Ga.* 884 (38 S. E. 94, 52 L. R. A. 621); *Henderson* v. *State,* 123 *Ga.* 739, 747-8 (52 S. E. 764). However, though the ruling must necessarily have been controlling, one is not for that reason precluded from presenting what might be a controlling question, if the plaintiff in error was right as to this contention, merely because it may happen that he was wrong as to the law. The real question in such a case is whether a complaining party would have succeeded in his contention if the law had been as he contended. In other words, in the caveat the plaintiff in error made certain allegations of fact which were admitted by the demurrer to be true, and for the purposes of the demurrer these facts being admitted to be true, we must look, not to the evidence as it was later submitted at the trial, but to the statement of the evidence as contained in the caveat; and this makes the matter not greatly dissimilar to the general provision relating to the right to file a bill of exceptions where a party would have prevailed in the trial court if a final judgment had been rendered in accordance with his contention; although there may not have been a final termination of the cause. The defendant in error, who makes the motion to dismiss, conceded at the time of the hearing on demurrer, and was obliged to admit, the contents and every statement in the second and third grounds of the caveat; and if the plaintiff in error is correct as to the necessity of the attention of the witnesses being called to the

fact that the paper sought to be attested is testamentary in its nature, that the witnesses must be requested by the testator to attest, etc., as set out in the second and third grounds of the caveat, then the striking of these paragraphs would be controlling. It would not matter if the caveatrix had other grounds upon which to rest her caveat which she might or might not be able to establish by proof; for she could establish the statements in the second and third paragraphs of the caveat and thereby defeat the probate of the will. The evidence transmitted to this court in accordance with provisions of § 6149 of the Civil Code could not be considered by the court in his ruling upon the demurrer; and it is well settled that a court of review cannot test the merit of any question not presented to the trial court.

The plaintiff in error excepted pendente lite to the judgment sustaining the demurrers and striking the second and third paragraphs of her caveat. She might have excepted to this ruling even had there been no trial at that term of the court. She has excepted here after the trial upon this single ground, insisting that it was controlling in the case; and had the trial judge sustained the contention presented in these paragraphs of the caveat, we think it would have been controlling, regardless of the opinion of the jury as to the evidence upon other points put in issue by the remainder of the caveat. The jury had a right to find, perhaps, from the evidence as to undue influence, fraud and misrepresentation, and publication, that the caveat was not sustained; and yet they might have found, if the law requires subscribing witnesses who attest a will to be informed by the testator that it is his will and also requires the testator to request the attesting witnesses, and if it were further requisite that the attesting witnesses to a will be truthfully informed that the paper they are about to attest is a will, that the witnesses were deceived as to the nature of the paper they were witnessing, that they were never requested by the testatrix, and that they were not informed that the paper was Mrs. Slade's will, and that they did not know the paper was a will. A reading of the evidence shows that two of the witnesses did not know the paper they were witnessing was a will, but supposed that it was a contract regarding the purchase of an automobile. The fact that in our opinion the plaintiff in error's view of the law is incorrect would not affect her right to have her bill of exceptions

considered if the decision of the question controls or did control the result in the trial of the case.

The fifth and sixth grounds of the motion to dismiss are not meritorious, for the reason that it is not to be presumed that the court would charge the jury on any issue of law or fact which was not in issue under the pleadings, and it must be presumed that the charge was confined strictly to these, in view of the previous ruling of the court upon the points involved upon demurrer. For these reasons the motion to dismiss the writ of error is overruled. It is true that the motion to dismiss presents, in effect, the same questions as are presented for adjudication in the main bill of exceptions and the cross-bill; and we could, therefore, well make such delivery as is in accordance with law in passing upon the motion to dismiss, but a motion to dismiss is not generally the proper method for determining questions of law other than those affecting procedure and practice. The contention of defendant in error, that even if the court below erred in striking the second and third paragraphs of the caveat, the error was harmless, because it will appear from an inspection of the evidence upon the trial that the ruling complained of did not necessarily control the result, is not sustained. A motion to dismiss may be sustained where it is palpable that this court has no jurisdiction, or where all the assignments of error are incomplete or so unintelligible as to prevent the court from knowing what points are presented for adjudication, or because the recitals of the bill of exceptions have not been verified, or for want of service, or for failure to comply with other rules of procedure which might be mentioned; but in view of the well-settled policy of this State, as demonstrated beyond question by numerous acts of the General Assembly, that dismissals of writs of error to this court are not favored, we must determine the questions presented upon their merits as ascertained from the entire record, rather than test the legal value of plaintiff in error's assignment of error by the expeditious procedural route suggested by the motion to dismiss.

2. In the bill of exceptions filed by the plaintiff in error two rulings of the court below are assigned as error, and are asserted to have been so prejudicial to the rights of the plaintiff in error that they were necessarily controlling of the verdict of the jury and the judgment of the court thereon. The first ruling excepted

to is that the court erred in striking on demurrer the allegations in the second paragraph of the caveat, to the effect that the paper propounded was not the will of Mrs. Slade, for the reason that the attesting witnesses were not informed by Mrs. Slade or any one else that it was her will, and that they did not know that this paper was her will, but on the contrary were informed by the testatrix and the defendant in error that it was a business paper. Plaintiff in error claims that the striking of this paragraph was error, because it deprived the plaintiff in error of the right to prove that the testatrix " did not publish the same as her last will and testament." No publication of a will, as an essential to its valid execution, is required in Georgia. The following code sections are pertinent. " A will is the legal expression of a man's wishes as to the disposition of his property after his death." Civil Code, § 3827. " No particular form of words is necessary to constitute a will; and in all cases to determine the character of an instrument, whether it is testamentary or not, the test is the intention of the maker, from the whole instrument, read in the light of the surrounding circumstances. If such intention be to convey a present estate, though the possession be postponed until after his death, the instrument is a deed; if the intention be to convey an interest accruing and having effect only after his death, it is a will." § 3828. " The very nature of a will requires that it should be freely and voluntarily executed; hence, anything which destroys this freedom of volition invalidates a will; such as fraudulent practices upon testator's fears, affections, or sympathies, duress or any undue influence, whereby the will of another is substituted for the wishes of the testator," § 3834. As to formalities of execution it is provided in § 3846, that " all wills (except nuncupative wills) disposing of realty or personalty must be in writing, signed by the party making the same, or by some other person in his presence, and by his express direction, and shall be attested and subscribed in the presence of the testator by three or more competent witnesses."

In 40 Cyc. 1117, it is said that " Unless required by statute publication of a will is unnecessary," and there is nothing in § 3846 of the Civil Code which requires publication. In support of the dictum from Cyc. which we have quoted above will be found a large number of decisions of the Supreme court of the Union. It

was early recognized by this court that no publication was required in Georgia. In the case *Beall* v. *Mann*, 5 *Ga.* 456, 469, the court said, "In the case of Gryle *vs.* Gryle, 1 Ves. Jr. 11, Lord Hardwick doubted whether it was a sufficient execution, and publication of a will, for the testator to say before the witnesses, 'this is my will,' without some further act on his part. But those doubts have long since vanished, and modern adjudications have gone to the extent of deciding that a will is duly executed and published, though the witnesses neither saw the testator's signature, nor were made acquainted with the instrument they attested, provided they were requested by the testator to subscribe the memorandum of attestation. British Museum *vs.* White, 3 M. and Pay. 689, s. c. 6 Bingh. 310. Wright *vs.* Wright, 5 M. & P. 316, s. c. 7 Bingh. 457. Johnson *vs.* Johnson, 1 Cromp. and Mees. 140." The headnote in the *Mann* case, supra, is as follows: "The usual mode in which assent to a will is manifested is by subscribing it, or acknowledging the signature in the presence of the witnesses, and ordinarily the execution would constitute sufficient evidence of the testator's knowledge of its contents." As was pointed out by Justice Beck in *Shewmake* v. *Shewmake*, 144 *Ga.* 801, 819 (87 S. E. 1046), the Code substantially adopts the provisions of the act of 29 Car. II, c. 3, § 5, commonly called the statute of frauds, on the subject of the necessary formalities in the execution of wills; and in that case this court reaffirmed and followed the ruling in *Beall* v. *Mann*, supra. Mr. Justice Beck, in *Shewmake* v. *Shewmake*, said: "We will follow the construction placed by the English courts upon that statute (29 Car. II, chap. 2) prior to our [Georgia] adopting act of 1784." The English courts uniformly held that the witnesses need not know that the instrument was a will. Lord Mansfield said, in Wyndham *v.* Chetwynd, 1 Burr. 421: "Suppose the witness is honest, how little need they know; they do not know the contents; they need not be together; they need not see the testator sign (if he acknowledges his hand it is sufficient); they need not know it is a will (if he delivers it as a deed it is sufficient)." And in Bond *v.* Seawell, 3 Burr. 1775, he said: "It is not necessary that the testator should declare the instrument he executed to be his will." In Trimmer *v.* Jackson, 4 Burn. Eccl. Law (9th ed.), 102, a will was set up where the testator purposely misled the witnesses into the belief

that it was a deed which they were attesting, and it was adjudged a sufficient execution. In the more recent case of White v. Trustees of British Museum, 3 M. and Pay. 689, 6 Bing. 310, which was very similar as to its facts upon this point to the case at bar, it was held that a will was sufficiently attested when subscribed by three witnesses in the presence of the testator and at his request, though none of the witnesses saw the testator's signature and only one of them knew what the instrument was.

In the well-considered Massachusetts case of Osborn v. Cook, 11 Cush. 532 (59 Am. D. 155), it was held that the "testator need not declare to witnesses nor need they know that the instrument that they attest at his request is his will. It is sufficient that he knows what the instrument is. No formal publication or declaration that it is his will is required." Under the evidence in the case now before us there is no doubt whatever that Mrs. Slade, the testatrix, knew the contents of the paper, and her knowledge and assent to the signing of the witnesses in her presence must be construed as equivalent to a request that these persons should sign as and when they did. Section 3840 of the Civil Code declares that, "In all cases, a knowledge of the contents of the paper by the testator is necessary to its validity; but usually, where a testator can read and write, his signature, or the acknowledgment of his signature, is sufficient." There is no allegation in the caveat that the testatrix did not sign the paper or that she did not know the contents of the paper which she did sign. The will is a part of the record in this case. The testimony of the three attesting witnesses and of Miss Florence Slade, as certified to this court under § 6149 of the Code, shows that the testatrix, who was a very intelligent woman, signed her name to the paper sought to be propounded. As said in Osborn v. Cook, supra, "There may exist very excellent reasons why the testator may not wish to disclose, and why the law should not require him to disclose, the fact that he has made a will at all; either, as Swinburn says, 'Because the testator is afraid to offend such persons as do gape for greater bequests than either they have deserved or the testator is willing to bestow upon them (lest they peradventure understanding thereof would not suffer him to live in quiet), or else should overmuch encourage others to whom he meant to be more beneficial than they expected (and so give them occasion to be more negligent husbands

or stewards about their own affairs than otherwise they would have been if they had not expected such benefit at the testator's hands) ;' or for some other considerations. Swinburn on Wills, 27."

In re Claflin's Will, 75 Vt. 19 (52 Atl. 1053, 58 L. R. A. 261), it was held that " attesting witnesses need not know that the attesting instrument is a will, to make the attestation valid, under a statute providing that wills must be attested and subscribed by witnesses in the presence of the testator and of each other." In that case a large number of both English and American cases were reviewed. We think the correct rule is well stated in Schouler on Wills (3d ed.), § 326, in which it is said to be the long-established doctrine of both England and the United States, that, in the absence of an express statute requiring publication, a will may be duly executed without any announcement by the testator of a testamentary purpose and without anything being said by him to show the nature of the instrument which the witnesses are called upon to subscribe. The maker's signature animo testandi and his proper acknowledgment showing that he put his name bona fide upon the paper that he desires witnessed, when he has not signed in their presence, renders the execution valid in general without any more formal execution; and that, the signatures of the witnesses being duly affixed, the act of execution becomes complete.

There is no significance in the use of the two terms " attested " and " subscribed," as used in § 3846 of the Code, which raises an inference of conflict in the meaning of the two terms, or an inference that the word " attested " embraces the idea that there is an acknowledgment of the paper as a will upon the part of the testator. The ruling of this court in *White* v. *Magarahan, 87 Ga.* 217, 219 (13 S. E, 509), defining the term " attestation," shows that the word " attested " does not carry with it any implication of publication. " Attestation is the act of witnessing the actual execution of a paper and subscribing one's name as a witness to that fact." In view of the language used by Mr. Justice Beck in the *Shewmake* case, supra, and the construction which the English courts have placed upon the meaning of the word " attest," it is plain that the word carries no inference of publication. In Bryant *v.* White, 2 Rob. Eccl. R. 315, Doctor Lushington said, " He felt no difficulty in answering the question, ' What is the meaning of

" Shall attest " ?    That " attest " means that the person shall be present and see what passes, and shall, when required, bear witness to the fact.' "    See also Seale *v.* Claridge, 50 L. J. Q. B. N. S. 316; Roberts *v.* Phillips, 4 El. & Bl. 450.    Ford *v.* Kettle, L. R. 9 Q. B. D. 139.    The requirement of § 3846 of the Code that " all wills . . must be in writing, signed by the party making the same, . · . and shall be attested and subscribed in the presence of the testator by three or more competent witnesses," does not mean that the witnesses should be present when required, to bear witness to the knowledge of the character and contents of the paper executed by the testator, but does mean and imply the presence of witnesses standing by when the testatrix signed her name or acknowledged her signature, and who, when required, can bear witness to the fact of the signature of the paper by the testatrix, and yet need not know what the paper was which was executed.    As said in re Claflin, supra, " attested " may be something more than subscribed, but it applies " in essentiality only to the execution of the instrument, and not to a knowledge of its character."

3.   The third paragraph of the caveat, which was stricken upon demurrer, alleged in substance that the paper sought to be propounded was not the will of Mrs. Slade, for the reason that Florence Slade at the time of making the same, induced Mrs. Slade to represent, and did herself also represent, to said witnesses that the paper was a business paper, and concealed from the witnesses the fact that it was a will.    There is no allegation that Mrs. Slade was deceived by the defendant in error into believing that it was a business paper or that she did not know it was a will; the crux of the allegation is that the paper was not the will of Mrs. Slade, because Mrs. Slade represented the paper to be a business paper.    In view of what has already been said in the second division of this opinion, the contention of plaintiff in error is not well founded and cannot be sustained.    In the bill of exceptions the error assigned upon the striking of this paragraph of the caveat is that the plaintiff in error was thereby prevented from proving that the paper sought to be propounded was procured by the fraud of the defendant in error.    However, such fraud as will invalidate a will must be fraud which operates upon the testatrix — a procurement of the execution of the will by misrepresentations

made to the testatrix. " Fraud sufficient to invalidate a will exists
only when it is shown that the testator relied on the misrepre-
sentation and was deceived." 40 Cyc. 1143, Moore *v.* Heineke,
119 Ala. 627 (24 So. 374) ; Blakey *v.* Blakey, 33 Ala. 611; Taylor
*v.* Kelly, 31 Ala. 59 (68 Am. D. 150). As already pointed out,
there is no charge in the third paragraph of the caveat that any
fraud was exerted upon Mrs. Slade by the defendant in error, or
any allegation that Mrs. Slade did not know and understand the
nature of the paper she was signing.

The trial judge did not err in sustaining the demurrers to the
caveat of which complaint was made, and the judgment must be
affirmed; and since this decision makes a final disposition of the
case, the cross-bill will be dismissed.

*Judgment on main bill of exceptions affirmed. Cross-bill of
exceptions dismissed. All the Justices concur.*