21771. CRAWFORD, Caveator v. CRAWFORD, Executor.

Argued September 11, 1962—Decided October 4, 1962.

*O. W. Roberts, St. John & St. John,* for plaintiff in error.
*Robert D. Tisinger,* contra.

Almand, Justice. To the petition of J. O. Crawford to probate the will of L. B. Crawford in solemn form in the Court of Ordinary of Carroll County, Jody Long Crawford filed a caveat. By consent the proceeding was appealed to Carroll Superior Court. On the trial, on motion by the propounder, a verdict was directed finding in favor of the will. Caveator's motion for a new trial, assigning error on the direction of the verdict and on two special grounds, was overruled.

In the will offered for probate, the testator devised and bequeathed all of his estate to his five nieces and nephews to the exclusion of his son and sole heir at law, Jody Long Crawford. The ground of the caveat was that the purported will was not the free and voluntary act of the testator but was the result of (1) undue influence, (2) fraud, (3) misrepresentation, and (4) mistake of fact resulting from actions by some of the legatees named in the will. The caveator admitted a prima facie case at the trial and assumed the burden of proving his grounds.

■ (a) Special ground 2 complains of the refusal of the court to permit a witness for movant to answer a question directed by counsel for the caveator. The assignment of error discloses the question asked, the objection and the ruling but it does not appear what the answer would have been. In such a situation the assignment of error is incomplete in that the court was not informed as to what the answer would have been. See in this regard *Allen v. Kessler,* 120 Ga. 319 (47 SE 900).

(b)   Special ground 3 assigns error on the sustaining by the court of an objection to a question asked Marvin Crawford on cross-examination by counsel for the caveator, to wit, "Why, don't you know the people down there in your community say he [Jody Crawford] even walks like his daddy?" An objection that the answer called for hearsay was sustained. This ruling was not error. The propounder made no contention or issue as to whether Jody Crawford was or was not the son of the testator. Whether the people in the community where the testator lived say the son "walks like his daddy" was immaterial to any issue in the case.

■   The main question for decision is whether there was any legal or probative evidence supporting any one or more of the grounds of the caveat which would require the submission of the case to a jury. To invalidate a will on the ground of undue influence the evidence must show that such influence amounted to fear, force, overpersuasion or coercion to the extent of destroying the free will power of the testator and in effect make the will the mental offspring of another and it must be shown that the undue influence was operating on the mind of the testator at the time the will was executed and published. Evidence which does no more than show opportunity for exerting influence falls short of showing the exercise of undue influence required to invalidate a will. See *Bailey v. Bailey*, 204 Ga. 556 (2) (50 SE2d 617), and citations. Fraud which will invalidate a will must be fraud which operates upon the testator, i.e., a procurement of the execution of the will by misrepresentations made to him. It exists only when it is shown that the testator relied on such a representation and was deceived. See *Slade v. Slade*, 155 Ga. 851 (4) (118 SE 645) and *Butler v. Lashley*, 197 Ga. 461 (29 SE2d 508). *Code* § 113-106 provides that one may bequeath his entire estate to strangers to the exclusion of his wife and children but in such cases the will should be closely scrutinized, and upon the slightest evidence of the aberration of intellect, or collusion or fraud, or any undue influence or unfair dealing, probate should be refused.

In light of the foregoing rules of law, how stands the evidence in this case? The evidence most favorable to the caveator may

be summarized as follows: When the caveator was a boy his mother and father separated. When he was three years old his parents were divorced. He has not lived with his father since the separation of his parents and has lived in Cullman County, Alabama, during most of his lifetime. Caveator made annual visits to his father. Their relations were friendly but the record does not disclose any acts of one to the other which indicate a close father and son relationship. There was no evidence of the father or son contributing to the support or interest of the other. No evidence of correspondence between the two is given. The caveator was not known to some of the beneficiaries under the will who lived near the testator. The only evidence as to what influence the beneficiaries had upon the testator in executing his will is as follows: A witness, Mrs. Meadows, testified that the testator boarded in her home for some fifteen years before his death; that about a year before his death and upon returning from a visit to the home of Marvin Crawford, the testator remarked that he was through with Marvin; that it was money, money, money every time he went down there and that Marvin would not pay what he owed the testator and that Marvin wanted him to move into his home. William L. Crawford, a nephew of the testator, testified that he visited the testator in December of 1959, and the testator said that Marvin Crawford had told him that his son, Jody, lived in Tennessee and that he, the witness, told the testator that Jody lived near him in Alabama and the testator then said: "Well, Marvin aggravating me to death and Jim's boy just ask me all the time to me that Jody was coming back to kill me, for me to watch him . . . I'll see into it now. . . They just want me to make up my will. . . I just had 2 boys, one got killed in the war. . . . Now, I got Jody. . . I aim for Jody to have everything I got." William Crawford further testified that the testator stated that he had to keep Marvin Crawford up and that Marvin was "no account" and he was going to quit loaning him money. Two other witnesses who were present at the December, 1959, meeting of William Crawford and the testator corroborated the testimony of William Crawford.

There is not a single line or word in the evidence to show that

any beneficiary under the will said or did anything to induce the testator to make his will. On the contrary, the evidence discloses that the testator on his own volition went alone to his attorney and told him of his desires as to the disposition of his estate and that none of the beneficiaries was present at the time the will was executed and that they had no knowledge of the existence of the will or its contents until after the death of the testator. The contents of the will disclose a reasonable and rational disposition of his estate. To his nephew, Marvin Crawford, he devised a life interest in fifty-one acres of land with the remainder to Marvin's two children. To his five nieces and nephews he bequeathed $500 each. At the end of ten years his executor was directed to sell his real estate and divide equally the proceeds between his five named nieces and nephews or their child or children in the event of the death of a niece or nephew prior to the time for distribution. In *Item Seven* he provided: "As an expression of deliberate intent I hereby make it known that I have considered all persons who might in any possible manner, have claims on my estate and this disposition is my own deliberate intent and no person who is not designated herein shall receive any part of the estate."

The evidence being wholly insufficient to show that the execution of the will resulted from fraud, undue influence or mistake, the court did not err in directing a verdict for the propounder.

The verdict directed being demanded by the evidence, it was not error to deny the motion for new trial.

*Judgment affirmed. All the Justices concur.*